# In the United States Court of Federal Claims

No. 18-694C
(Filed: July 31, 2019)

```
*****************************************
ALLEGHENY TECHNOLOGIES            *
INCORPORATED,                     *
                                  *
          Plaintiff,              *    RCFC 59(a)(1)(A); Reconsideration;
                                  *    RCFC 12(b)(1); Subject-Matter Jurisdiction;
v.                                *    Tucker Act Preemption; 28 U.S.C. § 1631;
                                  *    Judicial Transfer; Medicare Act
THE UNITED STATES,                *
                                  *
          Defendant.              *
*****************************************
```

James E. Brown, Washington, DC, for plaintiff.

Antonia R. Soares, United States Department of Justice, Washington, DC, for defendant.

## OPINION AND ORDER

**SWEENEY**, Chief Judge

Plaintiff Allegheny Technologies Incorporated moves for reconsideration, pursuant to Rule 59(a)(1)(A) of the Rules of the United States Court of Federal Claims ("RCFC"), challenging the court's December 17, 2018 ruling that the court lacks subject-matter jurisdiction over plaintiff's complaint. First, plaintiff asserts that the United States Court of Appeals for the Federal Circuit ("Federal Circuit"), in Wilson ex rel. Estate of Wilson v. United States, 405 F.3d 1002 (Fed. Cir. 2005), incorrectly interpreted a statute and that this court relied in error on what plaintiff considers dicta in that decision. Second, plaintiff asserts that, absent this error, this court would conclude that it possesses subject-matter jurisdiction over plaintiff's complaint. Because the court properly determined that it lacks subject-matter jurisdiction to entertain plaintiff's complaint, it denies plaintiff's motion.

## I. BACKGROUND

### A. Initial Proceedings

On May 16, 2018, plaintiff filed a complaint to recover $726,650 plus interest and costs from defendant pursuant to Medicare's Retiree Drug Subsidy Program ("RDS program").[1]

---

[1] The Medicare program was established in 1965 with the enactment of Title XVIII of the Social Security Act ("the Medicare Act"). See Social Security Amendments of 1965, Pub. L.

Compl. Prayer for Relief.  Therein, plaintiff alleged that it submitted sufficient cost and pricing data to have "substantially complied" with applicable statutes and was therefore entitled to subsidies offered under the RDS program, even though it did not complete all steps required in the procedures that the CMS promulgated.  Id. ¶¶ 15-19, 26.  Specifically, plaintiff asserted that because the CMS requests more information than needed to satisfy the statute, it was not necessary for plaintiff to comply with every step in CMS's procedures to substantially comply with the statute.  Id. ¶¶ 25-26.  Defendant moved to dismiss plaintiff's complaint for lack of subject-matter jurisdiction.

In its December 17, 2018 opinion, the court determined that it lacked subject-matter jurisdiction over plaintiff's complaint and that the complaint should be transferred to a court of competent jurisdiction—the United States District Court for the Western District of Pennsylvania ("Western District of Pennsylvania").  Allegheny Techs. Inc. v. United States, 141 Fed. Cl. 63, 73-74 (2018).  Specifically, the court held that plaintiff's claim for an RDS program subsidy arises from the Medicare Act and is, at bottom, a claim for benefits.  Id. at 72-73; see also Alvarado Hosp., LLC v. Price, 868 F.3d 983, 996 (Fed. Cir. 2017) ("The ultimate question is whether the claim is a claim for reimbursement benefits.  A claim that challenges a denial of reimbursement benefits, no matter how it is styled, is a claim for reimbursement benefits.").  The court also determined, relying on Federal Circuit precedent, that judicial review of Medicare benefits claims is committed to federal district courts.  Allegheny Techs., 141 Fed. Cl. at 72.  It explained that 42 U.S.C. § 405(h)—which precludes judicial review of decisions of the Social Security Commissioner except as expressly provided—applies to claims arising under the Medicare Act pursuant to 42 U.S.C. § 1395ii.  Id.  Additionally, the court relied upon Wilson for the proposition that 42 U.S.C. § 405(g)—which prescribes the judicial review of final decisions of the Social Security Commissioner—also applies to claims arising under the Medicare Act pursuant to 42 U.S.C. § 1395ii, and that therefore claims arising under the Medicare Act must be brought in federal district court.  Id.  The court further observed that although there were specific circumstances in which claims involving Medicare benefits could be reviewed at the United States Court of Federal Claims ("Court of Federal Claims"), those circumstances—claims involving breach of contract against the United States or putative plaintiffs unable to invoke the Medicare Act's comprehensive scheme of administrative and judicial review—were not applicable to plaintiff.[2]  Id. at 70-71.

No. 89-97, § 102(a), 79 Stat. 286, 291-332 (codified as amended at 42 U.S.C. §§ 1395-1395lll (2012)).  In 2003, Congress amended the Medicare Act to add a prescription drug benefit ("Medicare Part D") administered by the Centers for Medicare and Medicaid Services ("CMS").  See Medicare Prescription Drug, Improvement, and Modernization Act of 2003, Pub. L. No. 108-173, §§ 101-111, 900(a), 117 Stat. 2066, 2071-176, 2369 (codified as amended at 42 U.S.C. §§ 1395b-9(a), 1395w-101 to -154).  The component of Medicare Part D that provides subsidies to qualifying employer-sponsored health plans through the RDS program is implemented in 42 C.F.R. §§ 423.880-.894.

[2]  The court did not dismiss plaintiff's complaint because transfer must occur prior to dismissal of a claim.  See In re Teles AG Informationstechnologien, 747 F.3d 1357, 1360-61 (Fed. Cir. 2014).  Once a court dismisses a case, it lacks the authority to transfer the case to

2

**B.  Plaintiff's Motion for Reconsideration**

On January 3, 2019, plaintiff timely filed a motion for reconsideration in which it asserts that the court erred in concluding that it lacks subject-matter jurisdiction over plaintiff's complaint.  Pl.'s Mot. 5.  Specifically, plaintiff argues that the court erred by following what plaintiff considers to be dicta in Wilson, namely, that 42 U.S.C. § 405(g) applies to plaintiff's complaint via 42 U.S.C. § 1395ii.  Id.  According to plaintiff, this error by the court resulted in a flawed analysis and, consequently, an erroneous outcome.  Id. at 6, 8-10.  In essence, plaintiff contends that, absent the court's reliance on Wilson, the court would have found that it possessed subject-matter jurisdiction through exceptions to the general rule that claims for benefits under the Medicare Act are statutorily committed to the federal district courts.  Id. at 8-10.  Specifically, plaintiff argues that because Medicare Part D is silent on judicial review, its claim may be heard in this court because review is not otherwise available.  Id. at 16-17 (relying on Telecare Corp. v. Leavitt, 409 F.3d 1345, 1349 (Fed. Cir. 2005)).  Further, plaintiff requests that the court reconsider its decision to transfer the case to the Western District of Pennsylvania because jurisprudence in the United States Court of Appeals for the Third Circuit ("Third Circuit") does not follow the reasoning of Wilson.  Id. at 6.

Despite its jurisdictional arguments, plaintiff acknowledges that in various decisions, the United States Supreme Court ("Supreme Court") preserved the right for litigants to pursue Medicare benefit claims in federal district court based on federal-question jurisdiction pursuant to 28 U.S.C. § 1331.  Id. at 19 (citing Shalala v. Ill. Council on Long Term Care, Inc., 529 U.S. 1, 16 (2000).  Plaintiff advances a more expansive reading of Supreme Court precedent and contends that these decisions not "only preserve[] federal-question jurisdiction under 28 U.S.C. § 1331," but "also preserve[] all other grants of general federal jurisdiction, including Tucker Act jurisdiction, that otherwise apply."  Id. at 19-20.  According to plaintiff, the preservation of Tucker Act jurisdiction is absolute and confers authority on this court to entertain its claim.

**C.  Defendant's Response to Plaintiff's Motion for Reconsideration**

In its response to plaintiff's motion, defendant asserts that plaintiff seeks to relitigate the issue of jurisdiction and emphasizes that RCFC 59 "is not meant to be a vehicle for a party to relitigate issues."  Def.'s Resp. 4.  Defendant also observes that the parties do not dispute that plaintiff's claim arises under the Medicare Act, and maintains that this fact alone renders the claim jurisdictionally defective.  Id. at 4-5.  Further, defendant contends that judicial review of such claims, if available at all, must occur in federal district court pursuant to 28 U.S.C. § 1331 (federal-question jurisdiction) or the Medicare Act's "complex set of statutory provisions, which must be read together."  Id. at 6-7 (quoting Ill. Council, 529 U.S. at 7-8).

**D.  Plaintiff's Reply**

In its reply, filed by leave of the court, plaintiff supplements the arguments made in its motion for reconsideration.  First, plaintiff asserts that its motion is not an attempt to relitigate

---

another court.  Id. at 1361 (citing Tootle v. Sec'y of the Navy, 446 F.3d 167, 173 (D.C. Cir. 2006)).

3

the issues the court decided in its December 17, 2018 opinion; rather, plaintiff avers that its motion is necessary due to the "extraordinary" situation created by the court and the Federal Circuit's "clear[] err[or] on a question of statutory interpretation." Pl.'s Reply 2. Second, plaintiff contends that Tucker Act jurisdiction is available "because the Medicare Act does not provide for administrative or judicial review of [plaintiff's] claim." Id. Third, plaintiff posits that the CMS's regulations do not preempt Tucker Act jurisdiction. Id. at 2-3. Fourth, plaintiff maintains that Illinois Council preserves not only federal-question jurisdiction, but Tucker Act jurisdiction as well. Id. at 3. Fifth, plaintiff argues that because there is no remedial scheme under Medicare Part D for redress of plaintiff's claims, the "preemption holdings" in Whitecliff Inc. v. United States, 210 Ct. Cl. 53 (1976), and Spokane Valley General Hospital, Inc. v. United States, 231 Ct. Cl. 550 (1982), bind the court and permit its exercise of subject-matter jurisdiction. Id. at 5. Lastly, plaintiff asserts that it is unnecessary for the court to determine whether plaintiff's claim may be heard in federal district court under federal-question jurisdiction because plaintiff and defendant agree, for different reasons, that there is "no jurisdiction for any federal-question case filed by [plaintiff] in a district court." Id.

### D. Oral Argument

At plaintiff's request, the court heard argument on July 9, 2019. Plaintiff reiterated its view that Tucker Act jurisdiction is proper over its claim for Medicare benefits because Medicare Part D is silent as to judicial review, and the Tucker Act was intended to fill such gaps. Oral Arg. Tr. 11-12. Plaintiff maintains that the only waiver of sovereign immunity under which it could bring a claim in federal district court under federal question jurisdiction is the Administrative Procedure Act ("APA"), but "Tucker Act jurisdiction . . . preempt[s] a plaintiff's APA remedy." Id. at 13. Plaintiff noted that "all of the arguments that [the parties are] talking about here today could be – would be applicable equally in any federal question case that [plaintiff] were to bring in a [federal] District Court," and expressed its belief that "general grants of . . . federal jurisdiction control," id. at 13, and "in this case, Tucker Act jurisdiction preempts," id. at 14.

Defendant countered that the court correctly decided that it lacked subject-matter jurisdiction over plaintiff's claim, and properly relied on Supreme Court and Federal Circuit precedent in doing so. Id. at 21. Defendant described two "classes or buckets of Medicare-related cases that do get Tucker Act coverage"—cases concerning "ultimately a breach of contract" and those in which "a plaintiff . . . doesn't have . . . a contractual or beneficial relationship with the Medicare Act." Id. at 22. Defendant emphasizes that although plaintiff does not meet either of the exceptions that would permit the court to exercise its jurisdiction under the Tucker Act, plaintiff could bring a claim under federal-question jurisdiction in federal district court. Id. at 25 ("[Plaintiff] is a [Medicare] program participant that does clearly have . . . under Illinois Council, . . . judicial review in [federal] District Court under [28 U.S.C. §] 1331.").

### II. STANDARD OF REVIEW

A motion for reconsideration is a request for "extraordinary" relief and is not an avenue for a dissatisfied party to simply relitigate the case. Caldwell v. United States, 391 F.3d 1226,

4

1235 (Fed. Cir. 2004); Four Rivers Invs., Inc. v. United States, 78 Fed. Cl. 662, 664 (2007); Fru-Con Constr. Corp. v. United States, 44 Fed. Cl. 298, 300 (1999), aff'd per curiam, 250 F.3d 762 (Fed. Cir. 2000) (unpublished table decision).  Thus, such a motion does not allow a party to raise arguments that it failed to raise previously or reassert arguments that have already been considered.  Four Rivers Invs., 78 Fed. Cl. at 664.  Pursuant to RCFC 59(a)(1), the court "may grant a motion for reconsideration when there has been an intervening change in the controlling law, newly discovered evidence, or a need to correct clear factual or legal error or prevent manifest injustice."  Biery v. United States, 818 F.3d 704, 711 (Fed. Cir. 2016) (quoting Young v. United States, 94 Fed. Cl. 671, 674 (2010)).  A decision on a motion for reconsideration is within the discretion of the trial court.  Id.; see also Entergy Nuclear FitzPatrick, LLC v. United States, 711 F.3d 1382, 1386 (Fed. Cir. 2013) (explaining that a decision on a motion for reconsideration is reviewed on appeal for abuse of discretion).

## III.  DISCUSSION

Plaintiff does not contend that there has been a change in controlling law since the court's December 17, 2018 opinion.  Similarly, the court has not found any legal authority suggesting that the Federal Circuit's decision in Wilson has been abrogated.  Also, plaintiff does not assert that it has discovered new, material evidence that would change the court's prior conclusion.  Instead, plaintiff argues that the court's decision was erroneous due to the court's reliance on the Federal Circuit's decision in Wilson, which plaintiff contends was itself in error.  Pl.'s Mot. 5-6.  According to plaintiff's interpretation of Wilson, the Federal Circuit erred in finding that 42 U.S.C. § 405(g) was incorporated into the Medicare Act by 42 U.S.C. § 1395ii.  Id. at 6-7.  Plaintiff contends that due to this error, the court's prior decision must be revisited in the interest of justice.  Id. at 4-5.

In its motion, plaintiff repeats some of its previous assertions regarding the subject-matter jurisdiction of the court that were previously litigated by the parties and addressed in the court's December 17, 2018 opinion.  Although the purpose of reconsideration is not to relitigate the case, the court must nevertheless review its jurisdictional analysis to resolve the questions raised in plaintiff's motion.

As a preliminary matter, it is useful to identify several uncontested factual and legal matters that bear on the court's jurisdictional analysis.  First, the parties correctly do not dispute that plaintiff's claim for an RDS program subsidy arises under the Medicare Act.  Id. at 10; Def.'s Resp. 4-5; see Heckler v. Ringer, 466 U.S. 602, 615 (1984) ("[W]e construe[] the 'claim arising under' language quite broadly to include any claims in which 'both the standing and the substantive basis for the presentation' of the claims is the Social Security Act.").  Second, plaintiff does not assert a contract claim, a Fifth Amendment Takings Clause claim, or an illegal exaction claim, but instead presents a claim challenging the CMS's regulations implementing Medicare Part D.  Compl. ¶¶ 16-17, 23, 25-26.  Finally, plaintiff does not contest the court's

holding that plaintiff's claim is, at bottom, a claim for the subsidy that plaintiff would have received if the CMS had not strictly observed its subsidy submission deadline.[3]  Pl.'s Mot. 11.

Turning to the issues in dispute, the court rejects plaintiff's argument that the "preemption holdings" of Whitecliff and Spokane Valley support a conclusion that this court possesses subject-matter jurisdiction over plaintiff's complaint.  Reply 5.  As the Federal Circuit explained in St. Vincent's Medical Center v. United States, Whitecliff holds that the Court of Claims found that it "lacked jurisdiction pursuant to the Tucker Act" for Medicare claims "arising after June 30, 1973."  32 F.3d 548, 550 (Fed. Cir. 1994).  Additionally, Whitecliff's primary holding, which regarded calculation of Medicare benefits, was abrogated by Good Samaritan Hospital v. Shalala, 508 U.S. 402, 420 (1993).  Although it is an accurate statement that the 1982 decision in Spokane Valley held that the United States Court of Claims possessed subject-matter jurisdiction over a Medicare Part A claim, 231 Ct. Cl. at 555-56, subsequent binding Federal Circuit precedent has established that claims under Medicare Part A are no longer properly raised in the Court of Federal Claims, see, e.g., Wilson, 405 F.3d at 1012-13.

Plaintiff seemingly relies on Spokane Valley to argue that if this court once possessed jurisdiction over Medicare Part A claims during a time when the issue of judicial review was unsettled, then it naturally follows that the court has jurisdiction over Medicare Part D claims today.  The court declines to adopt plaintiff's view of the law because to do so would engraft a new review scheme neither contemplated by Congress nor consistent with Supreme Court precedent.  Consequently, complaints arising from Medicare Part A claims for benefits are channeled to federal district courts; that decision has no bearing upon plaintiff's Medicare Part D claim.  At any rate, Whitecliff and Spokane Valley involve issues either inapposite to the instant case or superseded by later statute or precedent.  Accordingly, plaintiff's arguments lack merit.

The court now turns to address whether its reliance on Wilson in dismissing plaintiff's complaint effected a manifest injustice on plaintiff.

### A.  The Court Did Not Err in Relying on Wilson

Plaintiff asserts that Wilson was incorrectly decided; specifically, that the Federal Circuit erred by concluding that 42 U.S.C. § 405(g) was made applicable to the Medicare Act by 42 U.S.C. § 1395ii.  Pl.'s Mot. 5.  In any event, plaintiff reasons, because the Wilson court also held that 42 U.S.C. § 1395ff incorporated section 405(g) into the Medicare Act, the assertion that section 1395ii incorporates section 405(g) was unnecessary to the outcome and therefore dicta.  Id. at 6-7.  The court rejects these assertions for three reasons.

### 1.  The Precedent of the Court of Appeals for the Federal Circuit is Binding on the Court of Federal Claims

There is no dispute that it is the duty of this court to align its decisions with the Federal Circuit's understanding of the law:

---

[3]  As the court held previously, "[p]laintiff proffers a claim for benefits[; plaintiff's] objective . . . is to receive the RDS program subsidy."  Allegheny Techs., 141 Fed. Cl. at 72-73 (second alteration in original).

Ordinarily, a trial court may not disregard its reviewing court's precedent. There are two narrow exceptions:  if the circuit's precedent is expressly overruled by statute or by a subsequent Supreme Court decision . . . .  Otherwise, a circuit court decision, if applicable, controls until the circuit court overrules it en banc. Thus, the trial judge . . . may do no more than criticize those opinions, urging en banc revision.

Strickland v. United States, 423 F.3d 1335, 1338 n.3 (Fed. Cir. 2005) (citations omitted); see also Coltec Indus., Inc. v. United States, 454 F.3d 1340, 1353 (Fed. Cir. 2006) ("There can be no question that the Court of Federal Claims is required to follow the precedent of the Supreme Court, our court, and our predecessor court, the Court of Claims.").

For these reasons, the court declines plaintiff's invitation to depart from Federal Circuit precedent and hold that Wilson was incorrectly decided.  If plaintiff seeks to challenge the Federal Circuit's holding in Wilson and its interpretation of 42 U.S.C. § 1395ii, it may do so through the appeal process.

## 2.   The Federal Circuit Repeatedly Invoked 42 U.S.C. § 405(g) in Wilson

First, the Federal Circuit's reference to 42 U.S.C. § 405(g) in Wilson was neither limited to a single instance, nor a simple transposition of characters that could be ascribed to a scrivener's error; rather, section 405(g) was quoted at length:

Judicial review of claims arising under the Medicare Act is pursuant to 42 U.S.C. § 405(g), which is made applicable to the Medicare Act by 42 U.S.C. § 1395ii, and which provides, in relevant part, as follows:

Judicial review

Any individual, after any final decision of the [Secretary] made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the [Secretary] may allow.  Such action shall be brought in the district court of the United States for the judicial district in which the plaintiff resides, or has his principal place of business, or, if he does not reside or have his principal place of business within any such judicial district, in the United States District Court for the District of Columbia.

Wilson, 405 F.3d at 1006-07 (alteration in original) (footnote omitted) (quoting 42 U.S.C. § 405(g)).  Indeed, the Wilson decision refers to section 405(g) nine separate times, which persuades the court that section 405(g) was important to the Federal Circuit's analysis and that these references were purposeful.

7

Further, the Federal Circuit included a footnote in its decision that did not exclude any subsections of 42 U.S.C. § 405 from incorporation under 42 U.S.C. § 1395ii:

> Section 1395ii provides in relevant part:  "The provisions of . . . [42 U.S.C. § 405] . . . shall also apply with respect to [the Medicare Act] to the same extent as they are applicable with respect to [the Social Security Act], except that, in applying such provisions with respect to [the Medicare Act], any reference therein to the Commissioner of Social Security or the Social Security Administration shall be considered a reference to the Secretary or the Department of Health and Human Services, respectively."

Id. at 1002 n.6 (alterations in original) (quoting 42 U.S.C. § 1395ii).  The Federal Circuit's two references to section 1395ii persuade the court that the Federal Circuit considers section 405(g) incorporated thereunder.  Additionally, if the Federal Circuit reasons that both 42 U.S.C. § 1395ff and 42 U.S.C. § 1395ii incorporate a statutory provision, it does not follow that the presence of one necessarily diminishes the vitality of the other.  In short, the Federal Circuit's observation that section 1395ii incorporates section 405(g) into the Medicare Act is not dicta, and the court therefore did not err in relying on it.

### 3.    The Federal Circuit's Analysis in Wilson Applies to Plaintiff's Claims

Third, arguments that attempt to litigate claims for Medicare benefits in the Court of Federal Claims have been squarely rejected by the Federal Circuit.  Wilson cautions courts to be wary of arguments that "would subvert the carefully crafted scheme that Congress created [so that] whenever a Medicare claimant disagreed with agency action on the ground that the action was contrary to statute (even if the question turned on the meaning of a statutory provision), he or she could opt out of the administrative review process."  405 F.3d at 1013.  There is a wealth of authority supporting the proposition that claims arising under the Medicare Act must be pursued through the statutory review process.  See, e.g., Ringer, 466 U.S. at 614; Alvarado Hosp., 868 F.3d at 996; Do Sung Uhm v. Humana, Inc., 620 F.3d 1134, 1142-43 (9th Cir. 2010); Midland Psychiatric Assocs., Inc. v. United States, 145 F.3d 1000, 1004 (8th Cir. 1998); Bodimetric Health Servs., Inc. v. Aetna Life & Cas., 903 F.2d 480, 487 (7th Cir. 1990).

Although plaintiff is not using litigation as a method of bypassing channels of administrative review here, its legal argument, if accepted by the court, would have that effect upon judicial review.  Because plaintiff's approach is a fresh enterprise, the lack of authorities supporting plaintiff's position is understandable.  Otherwise, plaintiff would be able to muster citations to Federal Circuit or Court of Federal Claims decisions, rather than arguing that a lack of such authorities implies the existence of subject-matter jurisdiction.  Only Congress, not this court, can define the subject-matter jurisdictional contours of the Court of Federal Claims.  Consequently, every plaintiff must carry its burden to establish subject-matter jurisdiction by a preponderance of the evidence.  Trusted Integration, Inc. v. United States, 659 F.3d 1159, 1163 (Fed. Cir. 2011).  The lack of an affirmative grant of jurisdiction and binding precedent precluding this court exercise of jurisdiction over Medicare benefits cases prevents plaintiff from satisfying its burden in this case.

In sum, the court again concludes that the weight of authority is decisive:  judicial review of Medicare benefits claims is not proper in the Court of Federal Claims.  Judicial review in this case should proceed as other Medicare claims for benefits would—in federal district court.

### B.  Plaintiff's Remedy, If Any, Lies in District Court

Independent of Wilson, there is ample authority to conclude that Medicare's comprehensive review scheme is incorporated into its constituent "parts," including Medicare Parts A, B, and D.  Thus, contrary to plaintiff's arguments, the absence of Tucker Act jurisdiction in this court does not foreclose plaintiff's ability to obtain judicial review elsewhere.

As the Supreme Court explained in Bowen v. Michigan Academy of Family Physicians, courts are to "begin with a strong presumption that Congress intends judicial review of administrative action."  476 U.S. 667, 670 (1986).  Adhering to this principle, the Supreme Court ruled that 42 U.S.C. § 405(h), which precludes judicial review of decisions of the Social Security Administration except as expressly provided,[4] "does not apply on its own terms to Part B of the Medicare program, but is instead incorporated mutatis mutandis by [42 U.S.C.] § 1395ii."[5]  Id. at 680.  Then, declining to hold that section 405(h) did not permit judicial review, the Supreme Court held that it would not "indulge the Government's assumption that Congress . . . intended no review at all of substantial statutory and constitutional challenges to the . . . administration of Part B of the Medicare program."  Id.  The Supreme Court, addressing review of "challenges to the validity of the Secretary's instructions and regulations" pertaining to Medicare claims, held that such actions "are cognizable in courts of law."  Id.  The Supreme Court found that such "disposition avoids the 'serious constitutional question' that would arise if it construed § 1395ii to deny a judicial forum for constitutional claims arising under Part B of the Medicare program."  Id. at 681 n.12.

The Supreme Court further clarified its Michigan Academy decision in Illinois Council, explaining that courts should

> read Michigan Academy as holding that § 1395ii does not apply § 405(h) where application of § 405(h) would not simply channel review through the agency, but

---

[4]  Specifically, 42 U.S.C. § 405(h) provides that

> no findings of fact or decision of the Commissioner of Social Security shall be reviewed by any person, tribunal, or governmental agency except as herein provided.  No action against the United States, the Commissioner of Social Security, or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter.

[5]  Mutatis mutandis means "[a]ll necessary changes having been made."  Ill. Council, 529 U.S. at 17 (quoting Mutatis mutandis, Black's Law Dictionary 1039 (7th ed. 1999)).

9

would mean no review at all. . . . [T]hat single rule applies to Medicare Part A as much as to Medicare Part B.

Ill. Council, 529 U.S. at 19. Thus, Illinois Council permits claims for Medicare Part A and Medicare Part B benefits to be brought in federal district courts under 28 U.S.C. § 1331 federal-question jurisdiction if the alternative is no review at all. Accord id. at 42-43 (Thomas, Stevens, Kennedy, Scalia, JJ., dissenting). The court sees no reason why a similar result should not apply here.

Furthermore, there is additional authority from the Federal Circuit that holds that this court may not review reimbursement claims arising under the Medicare Act.

[T]he Medicare Act specifically precludes review of reimbursement claims by, inter alia, the Court of Federal Claims. Section 405(h) of title 42 of the United States Code, read in conjunction with 42 U.S.C. § 1395ii, unequivocally provides that "no action" arising under the Medicare Act shall be brought in any forum or before any tribunal that is not specifically provided for in the Medicare Act. The Medicare Act does not provide for jurisdiction in the Court of Federal Claims; thus, the Court of Federal Claims is precluded from reviewing reimbursement disputes arising under the Act. . . . [T]he provisions of [42 U.S.C. § 405(h)] have been incorporated by reference into the Medicare Act by 42 U.S.C. § 1395ii . . . . Accordingly, under the plain terms of 42 U.S.C. §§ 405(h) and 1395ii, the Court of Federal Claims lacked jurisdiction to review [the plaintiff's] Medicare reimbursement claim.

St. Vincent's Med. Ctr. v. United States, 32 F.3d 548, 550-51 (Fed. Cir. 1994). Therefore, regardless of the application of section 405(g), there is ample precedent for the court to conclude that, wherever jurisdiction may be appropriate for plaintiff's claim, it is not in this court.

Plaintiff is correct that some cases decided after Ringer involving, but not arising from, the Medicare Act have been found to be within the court's Tucker Act jurisdiction. But plaintiff's claim lacks a critical element that presented in those other cases—a substantive basis, such as a contract or exaction, that connected their claim to the Tucker Act. See, e.g., Alvarado Hosp., 868 F.3d at 999 (contract); Telecare, 409 F.3d at 1349 (exaction). Claims for money damages or illegal exaction do not have, or require, a statutory basis in the Medicare Act and therefore, the Medicare Act's scheme of review does not reach those claims.

In Telecare, a health services provider sued the federal government in the United States District Court for the Northern District of California under the Little Tucker Act, 28 U.S.C. § 1346(a) (2012), to recover money paid to Medicare for expenses incurred by an employee.[6]

---

[6] The Little Tucker Act provides that "district courts shall have original jurisdiction, concurrent with the United States Court of Federal Claims," of a "civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1346(a). "The Little Tucker Act and its companion statute, the Tucker Act,

10

409 F.3d at 1347.  Pursuant to the statute, the provider was required to pay money to the government for overpayment of Medicare benefits to its employees.  Id.; see also id. at 1349 ("Medicare did not assert that it overpaid benefits to Telecare, but rather to Telecare's employee.").  On appeal, the Federal Circuit did not construe Telecare's claim as a claim for benefits, but instead treated it as a claim arising from an exaction.  Id. at 1349.  The Federal Circuit explained the jurisdictional distinction between benefits claims and exaction claims:

> "The Tucker Act provides jurisdiction to recover an illegal exaction by government officials when the exaction is based on an asserted statutory power."  Aerolineas Argentinas v. United States, 77 F.3d 1564, 1573 (Fed. Cir. 1996).  . . .
>
> However, . . . Tucker Act jurisdiction is limited in Medicare cases . . . .
>
> . . . Little Tucker Act jurisdiction and federal question jurisdiction [is barred] for a claim "arising under" the Medicare Act.

Id. at 1348.

Ultimately, the Federal Circuit held that the Medicare Act's review scheme did not operate to preclude all judicial review, because to do so would exclude claims that the scheme of review was not designed to address.  Id. at 1349.  Indeed, the provider could not invoke the review process in the Medicare Act because it was not a beneficiary, but an employer:

> Telecare is not asserting, and cannot assert, any claim of entitlement to Medicare benefits, or any other claim under [the Medicare Act's review scheme].  The specialized review process is thus not available.  Because Telecare cannot invoke the specialized administrative and judicial review process . . . the district court properly had jurisdiction under the Little Tucker Act to adjudicate Telecare's claim . . . .

Id. (footnote omitted).  Critical to the Federal Circuit's conclusion that jurisdiction under the Little Tucker Act was proper was that the provider's claim was not for Medicare benefits but instead for an illegal exaction.  An exaction claim provides an independent basis for jurisdiction and is a type of claim that the Tucker Act and the Little Tucker Act were designed to address.  In this case, plaintiff does not allege that it is attempting to recover money paid to the government but is instead seeking the payment of a subsidy it was denied.  Thus, it cannot invoke this court's jurisdiction over illegal exactions to pursue its claim.

Similarly, Alvarado Hospital concerned a claim that involved the Medicare program, but jurisdiction was not preempted by the Medicare Act's scheme of judicial review.  In Alvarado

---

do not themselves 'creat[e] substantive rights,' but 'are simply jurisdictional provisions that operate to waive sovereign immunity for claims premised on other sources of law.'"  United States v. Bormes, 568 U.S. 6, 10 (2012) (alteration in original) (citation omitted) (quoting United States v. Navajo Nation, 556 U.S. 287, 290 (2009)).

11

<u>Hospital</u>, the plaintiff sought relief for breach of a settlement agreement with the CMS. 868 F.3d at 989. The CMS made offers to the plaintiff to resolve denials of health care providers' claims that resulted from a large backlog of Medicare appeals, but the CMS refused to pay the plaintiff because of an ongoing investigation. <u>Id.</u> at 988-89. The Federal Circuit explained that "[c]ontract law is [a] separate source of law compensable under the Tucker Act," <u>id.</u> at 991, and concluded that "enforcement of [a] settlement agreement is a separate action and not a continuation of [an] underlying [claim] for Medicare reimbursement," <u>id.</u> at 994. In other words, the plaintiff was not "disputing the underlying determinations denying their [Medicare] reimbursement claims," <u>id.</u>, but seeking "the benefit of the bargain," and therefore the claim was "fundamentally a suit to enforce a contract" rather than a suit for benefits, <u>id.</u> at 995. Accordingly, the Federal Circuit found that the Court of Federal Claims' Tucker Act jurisdiction was not preempted by the Medicare Act's scheme of judicial review. <u>Id.</u> at 995-96. Here, plaintiff does not allege a breach of contract by the federal government. Thus, it cannot invoke this court's contract jurisdiction to pursue its claim.

Plaintiff relies on <u>B&H Medical, LLC v. United States</u>, 116 Fed. Cl. 671 (2014), for the proposition that CMS regulations cannot affect this court's subject-matter jurisdiction. Even setting aside the fact that prior decisions of the Court of Federal Claims do not bind the court here, plaintiff's reliance on <u>B&H Medical</u> is misplaced. <u>B&H Medical</u> involved a dispute over a contract with the CMS to provide medical supplies, <u>id.</u> at 675, which unquestionably falls under the Tucker Act and thus, as explained above, is readily distinguishable from the instant case. In any event, it is the Medicare Act itself, as well as binding precedent—not CMS regulations—that precludes jurisdiction in this court over plaintiff's complaint. Thus, plaintiff's assertion that CMS regulations do not preclude jurisdiction misses the mark. Other, more relevant passages in <u>B&H Medical</u> discuss subject-matter jurisdiction as to count two of B&H Medical's complaint, which, like plaintiff's claim here, was a claim for reimbursement benefits. <u>See id.</u> at 689. There, the court determined that it lacked subject-matter jurisdiction, extensively quoting the Federal Circuit's decision in <u>Pines Residential Treatment Center v. United States</u>, 444 F.3d 1379 (Fed. Cir. 2006). <u>B&H Med.</u>, 116 Fed. Cl. at 689-91. <u>Pines</u> provided:

> "Courts have consistently found preemption of Tucker Act jurisdiction where Congress has enacted a precisely drawn, comprehensive and detailed scheme of review in another forum . . . ." In <u>St. Vincent's</u>, we held that the Medicare Act's "comprehensive administrative and district court review procedures" give rise to such preemption. . . . We concluded that "[b]ecause the Medicare Act contains its own comprehensive administrative and judicial review scheme, there is no Tucker Act jurisdiction over Medicare reimbursement claims."

> . . . We observed that "[s]ection 405(h) of title 42 of the United States Code, read in conjunction with 42 U.S.C. § 1395ii, unequivocally provides that 'no action' arising under the Medicare Act shall be brought in any forum or before any tribunal that is not specifically provided for in the Medicare Act." Therefore, because "[t]he Medicare Act does not provide for jurisdiction in the Court of Federal Claims; . . . [it] is precluded from reviewing reimbursement disputes arising under the Act."

12

444 F.3d at 1380-81 (alterations in original) (citations omitted). Pines, unlike B&H Medical, does bind this court, and that decision emphatically places reimbursement claims outside the court's jurisdiction. Plaintiff marshals no authority to overcome either section 405(h)'s prohibition on litigation in a forum not provided for in the Medicare Act, or the Federal Circuit's interpretation of that section in Pines and St. Vincent's Medical Center.

Pines also stands for the proposition that some claims that have a basis outside of the Medicare Act can nevertheless be channeled into the Act's scheme of review if the claim is "inextricably intertwined" with a claim for benefits. Id. at 1381. Under Pines, there can be no question that the Federal Circuit views "resolving questions under the Medicare Act" to be outside of the Court of Federal Claims' jurisdiction. Id. And it is impossible to answer the question of whether the CMS regulations lawfully implement Medicare Part D without resolving a question under the Medicare Act. The court therefore concludes that adjudicating plaintiff's complaint requires interpreting the Medicare Act. Plaintiff's complaint as to the fidelity of CMS's procedures to the Medicare Act is inextricably intertwined with its claim for a subsidy under Medicare Part D.

In sum, the court concludes that beyond the Federal Circuit's decision in Wilson, binding precedent supports its determination that it lacks subject-matter jurisdiction to entertain plaintiff's claim for Medicare benefits and that the lack of Tucker Act jurisdiction does not preclude plaintiff from pursuing its claim in another forum.

### C. The Court's Decision Did Not Effect Manifest Injustice

The plaintiff bears the burden of proving, by a preponderance of the evidence, that the court possesses subject-matter jurisdiction. Trusted Integration, Inc., 659 F.3d at 1163. To invoke Tucker Act jurisdiction, a party must establish that there is a money-mandating statute upon which its claim is based. United States v. Testan, 424 U.S. 392, 401-02 (1976). However, the mere fact that a claim arises from a money-mandating statute does not guarantee jurisdiction. A statute with its own comprehensive review scheme preempts Tucker Act jurisdiction. See Bormes, 568 U.S. at 13. The Supreme Court has "consistently held that statutory schemes with their own remedial framework exclude alternative relief under the general terms of the Tucker Act." Id.

The fact that there is no specific provision for judicial review in Medicare Part D does not operate to create jurisdiction in this court, particularly when controlling precedent expressly holds that review of claims for benefits arising from the Medicare Act are to be brought in federal district court. See, e.g., Pines, 444 F.3d at 1381; Telecare, 409 F.3d at 1349; St. Vincent's Med. Ctr., 32 F.3d at 550-51. Such a bare assertion by plaintiff is simply insufficient to carry its burden to demonstrate this that court possesses subject-matter jurisdiction over its claim. To meet this burden, a plaintiff must do more than argue that a statute is silent on judicial review; there must be a strand to connect the plaintiff's claim to the court's jurisdictional statute. If the claim arises from a statute that normally preempts a court's jurisdiction, such as the Medicare Act, there must be a critical element of the claim that transcends that statute's scheme of review. As the court stated in its December 17, 2018 opinion, a claim "arises under" Medicare if the substantive basis of the claim and the standing to bring the claim both arise from the Medicare statute. Allegheny Techs., 141 Fed. Cl. at 71 (quoting Ringer, 466 U.S. at 615).

13

And claims for benefits that arise from the Medicare Act are not within the subject-matter jurisdiction of this court. Telecare, 409 F.3d at 1349. The Federal Circuit's precedent thus cordons these claims from this court's subject-matter jurisdiction.

Accordingly, the court finds no manifest injustice in its December 17, 2018 opinion. Plaintiff remains unable to meet its burden to establish subject-matter jurisdiction in the Court of Federal Claims.

### D.  The Interpretation of 42 U.S.C. § 1395ii Does Not Prevent Transfer

In addition to arguing that the court erred in concluding that it lacks subject-matter jurisdiction to entertain plaintiff's complaint, plaintiff argues that the court erred in transferring its complaint to federal district court pursuant to 28 U.S.C. § 1631. Pl.'s Mot. 5. This argument was not litigated previously, as the subject of transfer arose with the December 17, 2018 opinion.

Section 1631 of title 28 of the United States Code provides that a federal court "shall" transfer an action to another federal court when (1) the transferring court lacks subject-matter jurisdiction, (2) the action could have been brought in the transferee court at the time it was filed, and (3) such transfer is in the interest of justice. Accord Brown v. United States, 74 Fed. Cl. 546, 550 (2006). Plaintiff challenges the court's decision to transfer the case on two grounds. First, plaintiff contends that the court possesses subject-matter jurisdiction under the Tucker Act. Second, plaintiff asserts that the case cannot be transferred to the Western District of Pennsylvania because that court's controlling circuit, the Third Circuit, does not follow the Federal Circuit's understanding that 42 U.S.C. § 1395ii incorporates 42 U.S.C. § 405(g). The court has already explained—both in its December 17, 2018 opinion and above—why it lacks subject-matter jurisdiction to entertain plaintiff's complaint. The court thus turns to plaintiff's assertion that this case may not be transferred to a court within the Third Circuit because of the Third Circuit's interpretation of section 405(g).

As plaintiff highlights in its motion, there is no language specifically within Medicare Part D establishing a scheme of judicial review for its RDS program subsidy claim. Pl.'s Mot. 7. Plaintiff offers precedent from the Third Circuit to assert that its claims are ineligible for review in that circuit, which includes the Western District of Pennsylvania, under 42 U.S.C. § 405(g). See id. at 5-6. However, it is not necessary for the court to address this authority.

In determining which forum, if any, should receive a transferred case, it is the transferor court's responsibility to determine that the case could have been brought in the transferee court at the time it was originally filed. Tex. Peanut Farmers v. United States, 409 F.3d 1370, 1374 (Fed. Cir. 2005). A transferee court may indeed be subject to different circuit court precedent regarding 42 U.S.C. § 405(g), but there is Supreme Court precedent, as the court explained above, for finding the existence of federal-question jurisdiction pursuant to 28 U.S.C. § 1331. The court therefore sees no need for the recipient court to subscribe to the Federal Circuit's view of section 405(g) to conclude that it has subject-matter jurisdiction.

Having determined that it lacks subject-matter jurisdiction and that the Western District of Pennsylvania possesses subject-matter jurisdiction, the court is presented with two courses of action: the court may either dismiss the case or transfer the case. The court concludes that its

14

prior decision was correct and again deems it in the interest of justice to transfer the case to the Western District of Pennsylvania.

## IV. CONCLUSION

Not all claims against the government may be heard in this court. Gathering adequate authorities to support subject-matter jurisdiction remains plaintiff's burden, one the court declines to take up on plaintiff's behalf. The Federal Circuit has consistently ruled that claims for benefits arising from the Medicare Act cannot be heard by the Court of Federal Claims. Because claims for benefits are to be adjudicated in accordance with the Medicare Act's scheme of review, only claims possessing a basis beyond benefits can avoid being channeled into that scheme. To be properly before this court, a claim must have a basis recognized by the Tucker Act, that basis must be outside the Medicare Act's comprehensive scheme of administrative and judicial review, and that claim may not be not inextricably intertwined with the Medicare Act. Plaintiff's position lacks merit because, for all of the decisions it musters, plaintiff cannot establish a tie between its claim for an RDS program subsidy and the Tucker Act—that is, plaintiff makes a leap when it asserts that because it cannot find a provision for judicial review in Medicare Part D, such review must be available in the Court of Federal Claims. That flaw is fatal to plaintiff's invocation of subject-matter jurisdiction. Because plaintiff's claim is for benefits, it is completely subsumed by the Medicare Act, and plaintiff simply cannot set forth any other basis that could allow for Tucker Act jurisdiction.

To the extent that plaintiff can seek judicial review of its claim, it must do so following the path that the Supreme Court provided in Illinois Council. That path leads to federal district court. Plaintiff's motion for reconsideration is therefore **DENIED**. The court deems it in the interest of justice to transfer this case to the Western District of Pennsylvania. Accordingly, the clerk of court shall **TRANSFER** this case pursuant to 28 U.S.C. § 1631 to the United States District Court for the Western District of Pennsylvania.

**IT IS SO ORDERED.**

s/ Margaret M. Sweeney
MARGARET M. SWEENEY
Chief Judge

15